**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PLUMBERS' PENSION FUND LOCAL, *et al.*, | ) ) |
| Plaintiffs, | ) Case No. 21-cv-1342 |
| v. | ) ) Hon. Steven C. Seeger |
| ONLY PLUMBING 2, INC., *et al.*, | ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Joe Geraghty owned and operated a plumbing company, Only Plumbing, in the Chicagoland area. The company entered into a collective bargaining agreement with local unions, and thus had an obligation to make fringe-benefit contributions for its employees. The company apparently fell on hard times and could not make ends meet.

So Joe Geraghty decided to start a new plumbing company, G&N Plumbing, that had no collective bargaining agreement. This time, his wife – Gina Geraghty – owned the company. Only Plumbing shifted work to G&N Plumbing, and the two companies sent money to each other – but did not pay union contributions to the pension funds.

It was easier for the plumbing company to stay afloat without having to pay the union contributions. The family, meanwhile, used the new company to bankroll personal expenses, such as Christmas presents, prom dresses, pet care, school needs, and other payments.

At some point, the unions apparently got wind of the fact that the Geraghtys were running a non-union plumbing company. A collection of pension funds ultimately filed suit against the two plumbing companies and the Geraghtys for failure to pay contributions as required by

ERISA. As they see it, G&N Plumbing (the non-union company) and the Geraghtys are responsible for the unpaid contributions owed by Only Plumbing (the union company).

After discovery, the Funds moved for summary judgment. And in response, three of the four Defendants capitulated. G&N Plumbing, Only Plumbing, and Joe Geraghty concede liability. They admit that G&N Plumbing is the alter ego of Only Plumbing. And they acknowledge that this Court should pierce the corporate veil between Joe Geraghty and the two plumbing companies.

The only issue in the case is whether to pierce the corporate veil between G&N Plumbing and Gina Geraghty. Viewed as a whole, the record supports piercing the corporate veil. For the reasons stated below, the motion for summary judgment is granted.

## Background

This case is about two plumbing companies owned by two different members of the Geraghty family.

Defendant Joe Geraghty is the owner of Only Plumbing 2, Inc. ("Only Plumbing") (as an aside, there is no "Only Plumbing 1," as far as the Court can tell). Only Plumbing was a plumbing company based in Mokena, Illinois. *See* Defs.' Resp. to Pls.' Statement of Undisputed Facts ("Defs.' L.R. 56.1 Resp."), at ¶¶ 4, 12 (Dckt. No. 65).

Only Plumbing is dissolved. But when the company was up and running, Joe Geraghty was at the helm. He managed, controlled, and operated the company. *Id.* at ¶ 12. His wife, Gina Geraghty, was the registered agent. *Id.*

Joe Geraghty also runs G&N Plumbing, Inc., another plumbing company based in Mokena. Joe Geraghty manages and controls that company. *Id.* at ¶ 14. But he doesn't own it. Gina Geraghty owns G&N Plumbing. *Id.* at ¶¶ 13, 53. She is the president, too. *Id.*

Each of the Geraghtys had a role to play, and their respective roles were the same for each company. Joe Geraghty was the "rainmaker" for both plumbing companies (the Court uses past tense, because Only Plumbing is dissolved). *Id.* at ¶ 16. He also managed the hiring, firing, and payroll for each company, and controlled their debit cards. *Id.* at ¶ 21.

Gina Geraghty, on the other hand, was the registered agent for both companies. *Id.* at ¶¶ 5, 12. She also handled communications with contractors by sending emails on behalf of each company. *Id.* at ¶ 22.

The companies shared more than family ties. They shared funds from day one. Only Plumbing provided the seed money for G&N Plumbing. G&N Plumbing started with a $10,000 Zelle payment from the business account of Only Plumbing. *Id.* at ¶¶ 19, 44.

The flow of funds continued after the creation of G&N Plumbing. Bank records show that "numerous cash payments" and "repeated transfers" went back and forth between the two companies. *Id.* at ¶¶ 26, 46–47. At times, G&N made union fringe-benefit contributions to the Funds on behalf of Only Plumbing. *Id.* at ¶ 27.

They shared work, too. G&N Plumbing's work came from Only Plumbing's contacts. *Id.* at ¶ 20. For a while, plumbing work seamlessly flowed between the two companies. At times, Only Plumbing and G&N Plumbing completed jobs for the same clients simultaneously. *Id.* at ¶ 23. G&N Plumbing "took rehab from Only Plumbing 2 because there was nothing going on." *Id.* at ¶ 28. The Geraghtys also invoiced projects through both companies. *Id.* at ¶ 24.

They also shared a plumber. The same employee, Phillip K. Taylor, was the licensed plumber for both companies. *Id.* at ¶¶ 17–18.

Both companies financed the personal expenses of the Geraghtys, too. Company funds paid for eyelashes, prom dresses, vet bills, gambling, sports fees, travel, tutoring, and kids' allowances. *Id.* at ¶¶ 45, 50–52.

For all their similarities, Only Plumbing and G&N Plumbing have one important difference. In November 2016, Only Plumbing entered into a collective bargaining agreement that required it to pay contributions to the Trust Funds on behalf of its employees. *Id.* at ¶ 3. In contrast, G&N Plumbing is non-union, meaning that it never entered into a collective bargaining agreement requiring it to pay employee contributions to the Funds. *Id.* at ¶ 13.

That difference is the basis for this lawsuit. According to the Funds, the Geraghtys and the two companies orchestrated a scheme to avoid making contributions to the Funds. They did so by funneling work and money from the union company (Only Plumbing) to the non-union company (G&N Plumbing). *Id.* at ¶¶ 25, 31.

Specifically, the Funds contend that from January 2017 to September 2021, Only Plumbing failed to pay contributions in violation of section 502 of ERISA. *Id.* at ¶¶ 7, 11; *see also* Am. Cplt., at ¶ 22 (Dckt. No. 37). A later audit confirmed a substantial underpayment. In 2021, an audit confirmed that "thousands of hours of work" were not reported to the Funds, with a gross liability of $1,542,225.61 in unpaid contributions. *See* Defs.' L.R. 56.1 Resp., at ¶ 11 (Dckt. No. 65).

The Funds ultimately filed suit against the two plumbing companies and the Geraghtys. The basic concept is that the Funds seek the unpaid contributions owed by Only Plumbing. But Only Plumbing is a dissolved company. So, the Funds also seek to hold G&N Plumbing and the Geraghtys responsible for the unpaid amounts.

The amended complaint includes three counts under ERISA. Count I is against Only Plumbing, the company that entered into the collective bargaining agreement. The Funds seek all unpaid contributions. *See* Am. Cplt., at ¶¶ 19–23 (Dckt. No. 37).

The next two counts seek to hold G&N Plumbing and the Geraghtys responsible for the obligations of Only Plumbing. In Count II, the Funds allege that G&N Plumbing is the alter ego of Only Plumbing, and thus is bound by the collective bargaining agreement. *Id.* at ¶¶ 24–33. In Count III, the Funds seek to pierce the corporate veil and hold each of the Geraghtys liable for the unpaid contributions. *Id.* at ¶¶ 34–45.

After discovery, the Funds moved for summary judgment. Instead of meeting resistance, the motion was confronted with surrender. Three of the four Defendants admit liability. "Only Plumbing 2, Inc., G&N Plumbing, Inc., and Daniel Geraghty will not contest Plaintiff's Motion for Summary Judgment." *See* Defs.' Resp., at 1–2 (Dckt. No. 64).

Defendants admit many of the facts, too. Of the 54 paragraphs in the Funds' statement of facts, Defendants admitted almost all of them. Most importantly, Defendants admitted that work flowed from one company to another to avoid paying union contributions: "Plumbing work was funneled from Only Plumbing to G&N Plumbing *to avoid paying union contributions*." *Id.* at ¶ 30 (emphasis added).

In fact, Defendants admit that Joe Geraghty created G&N Plumbing so that he could continue to do plumbing work without making union contributions. "G&N Plumbing was incorporated for Mr. Geraghty to continue to be a plumber and an owner of a plumbing company when Only Plumbing was not able to make union contributions to the Funds." *Id.* at ¶ 31. He testified: "We shut the business down and went union because I couldn't afford it." *Id.* (citing his deposition testimony).

5

Joe Geraghty didn't hide what he was doing, either. He "told his contacts that he was now operating as G&N because he could not afford to pay union contributions." *Id.* at ¶ 32.

This case isn't his first rodeo. This case is the third lawsuit alleging that he formed a new company to avoid paying union contributions. "The Plaintiff Trust Funds have sued Mr. Geraghty twice before for this same offense by opening a new company up to avoid making union contributions." *Id.* at ¶ 42.

Defendants do not dispute the amount owed by Only Plumbing ($1,542,225.61). *Id.* at ¶ 11. Defendants also "concede G&N and Only Plumbing may be treated as a single entity." *See* Defs.' Resp., at 5 (Dckt. No. 64). That is, Defendants admit that "G&N is the alter ego of Only Plumbing." *Id.* at 6. And they concede that "veil-piercing with respect to Daniel [*i.e.,* Joe, who is Daniel Joseph Geraghty] should be allowed" because "both Only Plumbing and G&N were under the control of Daniel." *Id.*

Three of the four Defendants have confessed liability and surrendered. But one Defendant put up a fight. Gina Geraghty opposes the effort to hold her accountable for the obligations of the two companies.

In sum, the only live claim involves Gina Geraghty. The only contested issue is whether, based on the record, it is appropriate to pierce the corporate veil.

## Legal Standard

A district court "shall grant" summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of

establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive summary judgment, the opposing party must go beyond the pleadings and identify specific facts showing the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

The Court construes all facts in the light most favorable to the nonmoving party, giving her the benefit of all reasonable inferences. *See Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016). The Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of the non-movant. *See Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## Analysis

Defendants concede that Only Plumbing is liable for the unpaid contributions. They admit that G&N Plumbing is the alter ego of Only Plumbing. And they acknowledge that it is appropriate to pierce the corporate veil between the two companies and Joe Geraghty.

But that's where they draw the line. Defendants argue that Gina Geraghty should not be responsible for the obligations of G&N Plumbing.

Corporations "exist separately from their owners." *See Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012). The separate existence means that the owners typically are not responsible for the liabilities of the corporation. *See Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009); *Peetoom v. Swanson*, 778 N.E.2d 291, 294 (Ill. App. Ct. 2002) ("A corporation is a legal entity that exists separately and distinctly from

7

its shareholders, officers, and directors, who are not generally liable for the corporation's debts."). In fact, "the primary purpose of corporations is to insulate stockholders from unlimited liability." *See Buckley v. Abuzir*, 8 N.E.3d 1166, 1170 (Ill. App. Ct. 2014).

That rule applies even when a company has only one owner. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 380–81 (7th Cir. 2008); *Firstar Bank, N.A. v. Faul Chevrolet, Inc.*, 249 F. Supp. 2d 1029, 1040 n.3 (N.D. Ill. 2003); *Plastic Film Corp. of Am., Inc. v. Unipac, Inc.* 128 F. Supp. 2d 1143, 1147 (N.D. Ill. 2001) ("[T]he fact that a corporation has only one single shareholder is not proof that the corporation is the 'alter ego' of that shareholder."); *Melko v. Dionisio*, 580 N.E.2d 586, 596 (Ill. App. Ct. 1991) ("There is no minimum number of stockholders for a valid corporate existence, and a corporation with only one shareholder is entirely permissible. Absent any allegation that defendant disregarded [the company's] corporate entity, such as by intermixing its finances with his own or using it as a thinly capitalized sham to avoid liability, the mere allegation that he was a dominant or sole shareholder is insufficient to enable a court to disregard the separate corporate existence."). The question is not the number of owners. The question is whether there is a real boundary between ownership and the company.

A corporate veil hangs between the corporation and its owners, and that veil "allows an entity's investors to limit their liability and thus encourage investment." *See Wachovia Sec.*, 674 F.3d at 751. But veils are not impregnable.

A court may "pierce the corporate veil" and hold another person or entity liable for a business's debts "where the corporation is merely the alter ego or business conduit" of that other person or entity. *Peetoom*, 778 N.E.2d at 294–95. "This doctrine imposes liability on the individual or entity that uses a corporation merely as an instrumentality to conduct that person's

8

or entity's business." *See Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 775 (Ill. App. Ct. 2005). "Courts may pierce the corporate veil . . . where the corporation is so organized and controlled by another entity that maintaining the fiction of separate identities would sanction a fraud or promote injustice." *Buckley*, 8 N.E.3d at 1170.

Corporations and their owners must maintain "separate personalities," or else they will not be treated separately. *See Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388–89 (7th Cir. 1994). Parties who ignore corporate boundaries cannot rely on those boundaries to avoid liability.

Piercing the corporate veil is not a claim. *See United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 833 (N.D. Ill. 2007). It is an equitable doctrine, entrusted to the discretion of the trial court. *See Int'l Fin. Servs. Corp. v. Chromas Tech. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004) ("Whether to pierce the corporate veil is a matter of the trial court's discretion."). Basically, it is a way for a court to hold that there is no reason to separate one party from another party. Blurred lines outside the courthouse will lead to blurred lines inside the courthouse.

Illinois courts apply a two-part test when deciding whether the doctrine applies. "Illinois courts will pierce the corporate veil 'where: (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the parties who compose it no longer exist, and (2) circumstances are such that adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances.'" *Buckley*, 8 N.E.3d at 1170 (quoting *Tower Invs. LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927, 941 (Ill. App. Ct. 2007)).[1] The Court will address each requirement in turn.

---

[1] The parties take it as a given that Illinois law applies, without addressing why. Illinois choice-of-law rules state that "the law of the state in which a corporation is incorporated supplies the rule of decision

I. **Unity of Interest and Ownership**

The first issue is a unity of interest. The Funds must show that there is a unity of interest and ownership between Gina Geraghty and G&N Plumbing.

A number of factors come into play when evaluating whether there is a unity of interest, including: "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere façade for the operation of the dominant stockholders." *See Buckley*, 8 N.E.3d at 1171 (quoting *Gass v. Anna Hosp. Corp.*, 911 N.E.2d 1084, 1091 (Ill. App. Ct. 2009)). "No one element is dispositive, and the movant need not establish all of the elements to prevail." *See Hicks v. Clark*, 2017 WL 3394720, at *3 (N.D. Ill. 2017); *see also Roiser v. Cascade Mountain, Inc.*, 855 N.E.2d 243, 251 (Ill. App. Ct. 2006).

On the record at hand, the factors weigh heavily in favor of piercing the corporate veil. For starters, G&N Plumbing did not look or act like a corporation with a separate existence. G&N "failed to maintain corporate formalities." *See* Defs.' L.R. 56.1 Resp., at ¶ 54 (Dckt. No.

---

when a party seeks to pierce its corporate veil." *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1003 (N.D. Ill. 2017) (citing *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008)). Based on the record, Only Plumbing and G&N Plumbing are (or were) incorporated in Illinois. *See* Illinois Secretary of State Corporation/LLC Search/Certificate of Good Standing (Dckt. Nos. 61-10, 61-11); *see also* Defs.' Resp., at 1 (Dckt. No. 64) ("Now come Only Plumbing 2, Inc., a dissolved Illinois Corporation . . . G&N Plumbing, Inc. an Illinois Corporation . . . ."). So the Court agrees that Illinois law applies.

10

65).  Apart from its articles of incorporation, the company did not produce any documents about its maintenance or operation.  *Id.*

The company never issued stock.  *See* Defs.' Statement of Undisputed Facts, at ¶ 8 (Dckt. No. 65, page 12 of 18).  Gina Geraghty "never held any meetings to elect officers or directors or signed any consents."  *Id.*; *see also* Defs.' Resp., at 9 (Dckt. No. 64).  And there is nothing in the record about the payment of any dividends, either.  Viewed as a whole, that's no stock, no officers (except Gina), no directors, and no dividends.

From a follow-the-money perspective, the commingling of funds supports piercing the corporate veil, too.  The company shared funds with Only Plumbing and with the Geraghtys.  At times, the money sloshed back and forth as if everything was in one big pot.  The companies and the Geraghtys acted as if everyone was feeding from the same trough.

The Geraghtys used G&N to pay for a wide assortment of personal expenses.  The company paid for eyelashes, prom dresses, veterinary bills, and gambling.  *See* Defs.' L.R. 56.1 Resp., at ¶¶ 45, 49 (Dckt. No. 65).  The two plumbing companies paid for softball practices and training, meals, personal travel, tutoring, allowances, and other payments for the children.  *Id.* at ¶¶ 50–54.[2]

At deposition, Gina Geraghty testified about how she mixed her funds with G&N Plumbing's funds, and used the company's accounts for personal use.  For example, she acknowledged five payments from G&N Plumbing's bank account to her personal account in October 2020.  *See* Gina Geraghty Dep., at 109:21-24 (Dckt. No. 61-8).  Those transfers, she admitted, involved money she "had just fronted in the household probably."  *Id.* at 110:1-6.

---

[2] The numbers are misnumbered in Defendants' response.  Paragraph number 51 appears three times.  Paragraph 52 should be paragraph 54.

11

She acknowledged at deposition that G&N Plumbing paid other personal expenses, including Christmas presents, housing renovations, gas bills, and personal travel. *Id.* at 119:6 ("Christmas presents, that's what these are"); *id.* at 110:15-20 (acknowledging payment made to "Joe's brother, [for] doing our basement so the kids could live in"); *id.* at 111:13-22 (responding "I'm sure, yes," when asked if she used the G&N Plumbing account to pay for gas at her home); *id.* at 112:21 – 113:4 (explaining the purpose of a charge to G&N Plumbing's account from Southwest Airlines by saying, "We probably took [Joe's daughter] back to school. I think we took her back to Alabama."); *see also id.* at 124:11-17 (testifying about how money from G&N Plumbing was used to pay for the DUI of one of Joe Geraghty's children); *id.* 119:15-16 (referring to the payment for "Simba," the "3,000-dollar Pitbull we needed").

Gina Geraghty knew that her step-daughter (Paige) was using corporate funds, too. Her step-daughter "got a hold of [Joe's company] debit card and was buying clothes. Like, for instance, you saw the Peaches, the 700-dollar prom dress? That was her." *Id.* at 32:17-19; *see also id.* at 20:13-23. Gina Geraghty described her step-daughter's use of the company credit card as follows: "I mean, it was pretty bad. It was pretty bad. It was bad. I – You know, it was bad. And here we are today. Here we are today." *Id.* at 34:10-13. "[Y]ou're talking about Apple charges, you're talking lavish spending." *Id.* at 21:2-3; *see also id.* at 21:19-22 (describing taking 17 friends to Fogo de Chao for a 17th birthday party in a stretch Hummer); *id.* at 19:22 (referring to the "spoiled brat Paige").

The two companies swam in the same corporate slush fund, too. Money went back and forth, as if the companies were fungible. Gina Geraghty played a significant role in funneling money between them. *See* Defs.' L.R. 56.1 Resp., at ¶ 39 (Dckt. No. 65). She requested the $10,000 in seed money from Only Plumbing to get G&N Plumbing up and running. *See* Gina

Geraghty Dep., at 28:20-23, 117:16-18 (Dckt. No. 61-8). She also caused G&N Plumbing to take out loans to help Only Plumbing. *See id.* at 73:13-17 ("There was a time where G&N was getting – I was taking out crap loans to keep Only Plumbing 2 going, and you'll see that.").

In response, Joe Geraghty attempts to fall on the sword, and shield his wife from liability. Defendants argue that Gina Geraghty had little or nothing to do with G&N Plumbing, despite her title as the owner and the president of the company. As they see it, "[e]ven though Mrs. Geraghty was the 100% shareholder of G&N, the owner, and president, she had absolutely no authority or control over her own finances. Mrs. Geraghty held many titles at G&N, but those titles amounted to nothing." *See* Defs.' Resp., at 8 (Dckt. No. 64). Joe Geraghty goes so far as to say that "Gina never had anything to do with the plumbing business." *See* Daniel Geraghty Aff., at ¶ 7 (Dckt. No. 65-1).

But the record tells a different story. Gina Geraghty played a larger role than Defendants lead on. She offered a colorful description of her role:

> Q: And when you were – So what's your title at G&N?
>
> A: I'm the owner.
>
> Q: The owner/president?
>
> A: Uh-huh.
>
> Q: What does that entail?
>
> A: The owner of the shit show? I mean, what do you want me to tell you?
>
> Q: Just your day-to-day –
>
> A: My day-to-day is invoicing, making sure, you know – I don't know – making sure our bills are paid, making sure that, you know, I pay our crappy laborers, you know, whatever, I mean . . . .

*See* Gina Geraghty Dep., at 34:14 – 35:1 (Dckt. No. 61-8).

13

The record includes a number of examples of work performed by Gina Geraghty on behalf of G&N Plumbing. She handled licensing, accounting, billing, and communications with contractors. *See* Defs.' L.R. 56.1 Resp., at ¶¶ 22, 33, 40 (Dckt. No. 65). She testified that she had check writing authority, and did the book work. *See* Gina Geraghty Dep., at 81:23 – 82:7, 116:23 – 117:18 (Dckt. No. 61-8). She told her contacts that Only Plumbing was now operating as G&N Plumbing, too. *See* Defs.' 56.1 Resp., at ¶¶ 33–34.

Maybe Joe Geraghty ran the show, but Gina Geraghty was in the supporting cast. In any event, piercing the corporate veil is not limited to the person most closely connected to the company in question. She didn't need to be driving the train. The question is simply whether there was a unity of interest between G&N Plumbing and Gina Geraghty. And on this record, there was.

In sum, many of the factors weigh heavily in favor of piercing the corporate veil. Other factors are neutral or inapplicable. An example is whether G&N Plumbing is undercapitalized. There doesn't appear to be anything in the record on that issue. Most importantly, none of the factors weigh in favor of separating Gina Geraghty and G&N Plumbing.

Based on the record, the Court concludes that there was a unity of interest between Gina Geraghty and G&N Plumbing.

## II. Injustice or Inequitable Circumstances

The second issue involves the equities. The Court must determine whether "there is some unfairness, such as fraud or deception, or the existence of a compelling public interest that justifies piercing." *Buckley*, 8 N.E.3d at 1178. Based on this record, fairness requires holding Gina Geraghty accountable for the company's liabilities.

14

The equities begin with Only Plumbing. Gina Geraghty knew that Only Plumbing had to make contributions to the Funds. *See* Gina Geraghty Dep., at 56:21-23 (Dckt. No. 61-8). She testified that they began moving work from Only Plumbing to G&N Plumbing to avoid paying contributions to those Funds. *Id.* at 79:7 – 80:14.

G&N Plumbing sprang into existence to avoid paying the union contributions. As Defendants admitted, "G&N Plumbing was incorporated for Mr. Geraghty to continue to be a plumber and an owner of a plumbing company when Only Plumbing was not able to make union contributions to the Funds." *See* Defs.' L.R. 56.1 Resp., at ¶ 30 (Dckt. No. 65). "Plumbing work was funneled from Only Plumbing to G&N Plumbing to avoid paying union contributions." *Id.* at ¶ 31.

Through it all, Gina Geraghty was not subtle about her perspective. She sent an email to the owner of CC Affordable Housing about applying for a new license for G&N Plumbing from the City of Chicago. "I'm not gonna lie, I am petrified to re-register with the City of Chicago as G&N. Yes we have a new licensee. I'm waiting for the new 055 [*i.e.*, a plumbing license number]. As soon as that comes. I'll let you know. This union is BULLSHIT." *See* Defs.' L.R. 56.1 Resp., at ¶ 40 (Dckt. No. 65); Gina Geraghty Dep., at 135:6 – 136:11 (Dckt. No. 61-8); 5/10/21 Email (Dckt. No. 61-7, at 5 of 85).

Viewing the record as a whole, the equities favor piercing the corporate veil. Only Plumbing had an obligation to pay union contributions, and G&N Plumbing came into existence to shirk that obligation. And then, the Geraghtys used company funds to pay for household expenses. They didn't treat G&N Plumbing like it was a real company. They treated it like a piggy bank.

15

At bottom, the case is about a deliberate attempt to avoid paying union contributions owed under a collective bargaining agreement. The Geraghtys benefitted from the business of G&N Plumbing, which stayed afloat in part because it was not paying union contributions. The Geraghtys, in turn, benefitted from treating the company's money as their own. *See Wachovia Sec.*, 674 F.3d at 756 ("Illinois law endorses veil piercing to avoid unfair enrichment . . . .").

If the corporate veil is not pierced, the Funds would lose contributions that they are otherwise entitled to receive. The Funds should not lose funds because the Geraghtys pulled the rug out from under the union company, and then lined their own pockets with money from the non-union company. Without piercing the corporate veil, Gina Geraghty would reap the benefits of a scheme to scam the unions.

\*     \*     \*

One final note. Defendants made repeated statements in discovery and in the filings that they are not bad people. As they tell it, they were simply trying to make things work during desperate times. *See* Defs.' Resp., at 2 (Dckt. No. 64); Gina Geraghty Dep., at 80:11-14 (Dckt. No. 61-8) ("Look, when you're in survival mode, you do whatever the hell you got to do to survive. Okay. We are not bad people. We are not bad people."). Their brief recounts how the Geraghty family has encountered a number of significant challenges, including caring for two disabled children.

Nothing in this Opinion downplays those challenges or casts doubt on their hardship. Rest assured that this Court is not in the business of making judgments about whether someone is a good person or a bad person. That decision is above this Court's paygrade.

The only decision for this Court is whether Gina Geraghty has an obligation to pay the contributions under a theory of piercing the corporate veil. And on this record, the Court holds that she does (and this Court stops there).

## Conclusion

For the reasons stated above, Plaintiffs' motion for summary judgment is hereby granted.

Date: December 14, 2022

Steven C. Seeger
United States District Judge